UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FARNAZ NOJAVAN ASGHARI, <br><br> Plaintiff, <br><br> v. <br><br> MARCO RUBIO, Secretary of State, et al., <br><br> Defendants. | Civil Action No. 25-1666 (JMC) |

**MOTION TO DISMISS AND**
**<u>MEMORANDUM IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION .......................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

STATUTORY AND REGULATORY BACKGROUND ................................................. 2

LEGAL STANDARDS ................................................................................................... 3

ARGUMENT .................................................................................................................. 4

    I.      Plaintiff's Claims Fail Because There is No Discrete Agency Action that a
            Consular Officer is Required to Take. ................................................................... 4

    II.     Plaintiff's Claims Fail Under the Consular Non-Reviewability Doctrine. ............. 8

    III.    On the Merits, Plaintiff's Complaint Fails to State a Plausible Claim of
            Unreasonable Delay. ............................................................................................ 12

         A.    TRAC Factors 1 and 2 ............................................................................ 14

         B.    TRAC Factor 4 ........................................................................................ 17

         C.    TRAC Factors 3 and 5 ............................................................................ 19

         D.    TRAC Factor 6 ........................................................................................ 20

CONCLUSION ............................................................................................................. 21

## TABLE OF AUTHORITIES

Cases                                                                                                    Page(s)

*Abdo v. Tillerson*,
Civ. A. No. 17-7519, 2019 WL 464819 (S.D.N.Y. Feb. 5, 2019)................................................. 10

*Am. Nat'l Ins. Co. v. FDIC*,
642 F.3d 1137 (D.C. Cir. 2011) ..................................................................................... 3

*Ari Akrayi v. Dep't of State*,
Civ. A. No. 22-1289 (CRC), 2023 WL 2424600 (D.D.C. Mar. 9, 2023) ..................................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................... 3

*Baan Rao Thai Rest. v. Pompeo*,
985 F.3d 1020 (D.C. Cir. 2021) ................................................................................. 9, 10

*Bagherian v. Pompeo*,
442 F. Supp. 3d 87 (D.D.C. 2020) ............................................................................... 15

*Belizan v. Hershon*,
434 F.3d 579 (D.C. Cir. 2006) ...................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................... 3

*Colindres v. Dep't of State*,
71 F.4th 1018 (D.C. Cir. 2023)....................................................................................... 9

*Da Costa v. Immigr. Inv. Program Off.*,
80 F.4th 330 (D.C. Cir. 2023)....................................................................................... 13

*Dallas Safari Club v. Bernhardt*,
518 F. Supp. 3d 535 (D.D.C. 2021) .............................................................................. 20

*Dastagir v. Blinken*,
557 F. Supp. 3d 160 (D.D.C. 2021) ..................................................................... 14, 19, 20

*Davis v. U.S. Sent'g Comm'n*,
716 F.3d 660 (D.C. Cir. 2013) ....................................................................................... 5

*Department of State v. Muñoz*,
602 U.S. 899 (2024)........................................................................................ 1, 8, 11, 12

*Fang Fang Xu v. Cissna*,
434 F. Supp. 3d 43 (S.D.N.Y. 2020)........................................................................ 15, 18

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) ........................................................................................ 4

*Gong v. Duke*,
282 F. Supp. 3d 566 (E.D.N.Y. 2017) .......................................................................... 18

*Hajizadeh v. Blinken*,
Civ. A. No. 23-1766 (LLA), 2024 WL 3638336 (D.D.C. Aug. 2, 2024) ...................... 5

*Harisiades v. Shaughnessy*,
342 U.S. 580 (1952)..................................................................................................... 8, 9

*Hemmat v. Blinken*,
Civ. A. No. 23-2085 (TSC), 2024 WL 4210658 (D.D.C. Sept. 17, 2024) ................... 6

*Herbert v. Nat'l Acad. of Scis*.,
974 F.2d 192 (D.C. Cir. 1992) ........................................................................................ 3

*Ibrahim v. Spera*,
Civ. A. No. 23-3563 (ABJ), 2024 WL 4103702 (D.D.C. Sept. 6, 2024) ................... 5, 6

*In re Barr Lab'ys,*
930 F.2d 72 (D.C. Cir. 1991) ................................................................................... 17, 19

*In re Core Commc'ns, Inc.*,
531 F.3d 849 (D.C. Cir. 2008).................................................................................. 4, 12

*In re Ctr. for Biological Diversity*,
53 F.4th 665 (D.C. Cir. 2022)......................................................................................... 4

*In re Grant*,
635 F.3d 1227 (D.C. Cir. 2011)...................................................................................... 5

*In re Nat'l Nurses United*,
47 F.4th 746 (D.C. Cir. 2022)......................................................................................... 4

*In re United Mine Workers of Am. Int'l Union*,
190 F.3d 545 (D.C. Cir. 1999)................................................................................. 12, 13

*Janay v. Blinken*,
Civ. A. No. 23-3737 (RDM), 2024 WL 3432379 (D.D.C. July 16, 2024)................... 10

*Kangarloo v. Pompeo*,
Civ. A. No. 20-0354 (CJN), 2020 WL 4569341 (D.D.C. Aug. 7, 2020).......................................5

*Karimova v. Abate*,
Civ. A. No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) ............................................1

*Khaksari v. Chairman, Broad. Bd. of Governors*,
451 F. App'x 1 (D.C. Cir. 2011) ...................................................................................................5

*Kolesnikov v. Blinken*,
Civ. A. No. No. 23-1675 (TSC), 2024 WL 3638345 (D.D.C. Aug. 2, 2024).............................11

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*,
104 F.3d 1349 (D.C. Cir. 1997) ................................................................................................16

*Liberty Fund v. Chao*,
394 F. Supp. 2d 105 (D.D.C. 2005) ..........................................................................................17

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ...................................................................................................................16

*Liu v. Blinken*,
544 F. Supp. 3d 1 (D.D.C. 2021) ..................................................................................14, 19, 20

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .....................................................................................................................3

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
336 F.3d 1094 (D.C. Cir. 2003) ................................................................................................17

*Massachusetts v. EPA*,
549 U.S. 497 (2007)...................................................................................................................16

*Memon v. Blinken*,
Civ. A. No. 22-0754 (CKK), 2023 WL 1438396 (D.D.C. Feb. 1, 2023) ....................................13

*Mexichem Specialty Resins, Inc. v. EPA*,
787 F.3d 544 (D.C. Cir. 2015)...................................................................................................16

*Milligan v. Pompeo*,
502 F. Supp. 3d 302 (D.D.C. 2020) ...............................................................................14, 19, 20

*Mohammad v. Blinken*,
548 F. Supp. 3d 159 (D.D.C. 2021) ................................................................................14, 19, 20

*Montanans for Multiple Use v. Barbouletos*,
568 F.3d 225 (D.C. Cir. 2009) ......................................................................................... 4

*Motevali v. Blinken*,
Civ. A. No. 23-2133 (RC), 2024 WL 3580937 (D.D.C. July 30, 2024) ........................ 11

*Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.*,
842 F. Supp. 2d 127 (D.D.C. 2012) ................................................................................ 20

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ............................................................................................................ 5

*Papasan v. Allain*,
478 U.S. 265 (1986) ........................................................................................................... 4

*Pushkar v. Blinken*,
Civ. A. No. 21-2297 (CKK), 2021 WL 4318116 (D.D.C. Sept. 23, 2021) ..................... 19

*Rahimian v. Blinken*,
Civ. A. No. 22-785 (BAH), 2023 WL 143644 (D.D.C. Jan. 10, 2023) ........................... 14

*Rahman v. Blinken*,
Civ. A. No. 22-2732 (JEB), 2023 WL 196428 (D.D.C. Jan. 17, 2023) ........................... 16

*Rezaei v. Garland*,
Civ. A. No. 23-1645 (CKK), 2023 WL 5275121 (D.D.C. Aug. 16, 2023) ..................... 13

*Saavedra Bruno v. Albright*,
197 F.3d 1153 (D.C. Cir. 1999) ........................................................................................ 9

*Sarlak v. Pompeo*,
Civ. A. No. 20-0035 (BAH), 2020 WL 3082018 (D.D.C. June 10, 2020) ................... 15-18

*Sawahreh v. Dep't of State*,
630 F. Supp. 3d 155 (D.D.C. 2022) ................................................................................. 16

*Sedaghatdoust v. Blinken*,
735 F. Supp. 3d 1 (D.D.C. 2024) ................................................................................. 6, 11

*Shen v. Pompeo*,
Civ. A. No. 20-1263 (ABJ), 2021 WL 1246025 (D.D.C. Mar. 24, 2021) ........... 14, 16, 19, 20

*Sivananthan v. Blinken*,
Civ. A. No. 23-1181 (CKK), 2023 WL 4885858 (D.D.C. Aug. 1, 2023) ..................... 13, 16

*Skalka v. Kelly*,
246 F. Supp. 3d 147 (D.D.C. 2017) ........................................................................ 14, 15, 16, 19

*Tate v. Pompeo*,
513 F. Supp. 3d 132 (D.D.C. 2021) ........................................................................ 14, 17, 18, 20

*Telecomms. Research & Action Ctr. ("TRAC") v. Fed. Commc'ns. Comm'n*,
750 F.2d 70 (D.C. Cir. 1984) ...................................................................................... 1, 12, 19, 20

*Thomas v. Principi*,
394 F.3d 970 (D.C. Cir. 2005) ...................................................................................................... 3

*United States ex rel. Knauff v. Shaugnessy*,
338 U.S. 537 (1950) ...................................................................................................................... 9

*Varol v. Radel*,
420 F. Supp. 3d 1089 (S.D. Cal. 2019) ...................................................................................... 18

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
435 U.S. 519 (1978) .................................................................................................................... 17

*Wan Shih Hsieh v. Kiley*,
569 F.2d 1179 (2d Cir. 1978) ....................................................................................................... 9

*Wong Wing v. United States*,
163 U.S. 228 (1896) ...................................................................................................................... 8

*Yaghoubnezhad v. Stufft*,
734 F. Supp. 3d 87 (D.D.C. 2024) ......................................................................................... 6, 11

**Statutes**
5 U.S.C. § 555(b) ............................................................................................................................ 7
8 U.S.C. § 1104 ............................................................................................................................. 16
8 U.S.C. § 1201(g) .................................................................................................................. 1, 2, 4, 5
28 U.S.C. § 1361 ............................................................................................................................. 4
8 U.S.C. § 1361 ............................................................................................................................. 2

**Rules**
D.C. Cir. R. 32.1(b)(1)(B) ............................................................................................................. 5

**Regulations**

22 C.F.R. § 41.121(a) ...................................................................................................................... 2

By and through their undersigned counsel, Defendants respectfully move to dismiss this action pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiff claims unreasonable delay and seeks to compel the Government to act on her father's immigrant visa application (the "Visa Application"), which has already been refused by a consular officer in a foreign country.  Plaintiff's claims clearly lack merit under the D.C. Circuit views expressed in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), and the Supreme Court's recent ruling in *Department of State v. Muñoz*, 602 U.S. 899 (2024). These authorities make it unnecessary for the Court to apply the factors set forth in *Telecommunications Research & Action Center* ("*TRAC*") *v. Federal Communications Commission*, 750 F.2d 70, 79 (D.C. Cir. 1984), to dispose of this case.  Instead, the D.C. Circuit in *Karimova* made clear that after a consular officer refuses a visa application under Section 221(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(g), there is no further statutory or regulatory command to act, precluding mandamus relief under the Mandamus Act or the Administrative Procedure Act ("APA").  Additionally, the *Karimova* court made clear that an INA Section 221(g) refusal is a "final" refusal on the merits of a visa application, and thus, under *Muñoz* the consular nonreviewability doctrine also bars this suit.  Even if the Court did apply the *TRAC* factors, Plaintiff fails to plead a plausible claim of unreasonable delay.

While Plaintiff may be frustrated with the United States immigration system, that system does not afford Plaintiff a right to compel further consular action after a consular officer has considered and refused her father's visa application.  Congress has not granted that privilege to any noncitizen visa applicant or any U.S.-based sponsor. For these reasons, which are explored in depth below, the Court should dismiss this case.

## FACTUAL BACKGROUND

Through this action, Plaintiff seeks to compel the Government to re-adjudicate her father's application for an immigrant visa.  Compl. at 1.  Plaintiff alleges that on October 27, 2023, her father appeared for a consular interview at the U.S. Embassy in Ankara, Turkey and made and executed the Visa Application but was "refused" or placed into "administrative processing" at the end of the interview.  *See id.* ¶ 1.  Plaintiff alleges that certain post-refusal administrative processes remain ongoing, claiming that Plaintiff is in the dark as to the status of those post-refusal processes.  Ultimately, the period between the refusal of her father's Visa Application and the date Plaintiff filed this suit was approximately nineteen months.

## STATUTORY AND REGULATORY BACKGROUND

State Department regulations promulgated under authority of the INA provide as follows for immigrant visas: "When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa." 22 C.F.R. § 42.81(a).  The INA in turn has certain provisions describing bases for refusing visa applications.  One such provision, INA Section 221(g), 8 U.S.C. § 1201(g), dictates that a consular officer at a foreign post shall refuse a visa application if it appears to the consular officer from statements or papers in the application, or if the consular officer knows or has reason to believe, that the applicant is ineligible to receive a visa.  INA Section 291, 8 U.S.C. § 1361, places the burden on an applicant noncitizen to establish their eligibility for the requested visa to the satisfaction of the consular officer.

Because an INA Section 221(g) refusal is based on the applicant's failure to demonstrate their eligibility for a requested visa, consular officers often afford noncitizens who have been

refused under that section additional administrative processes, which may generate evidence or conclusions that would cause the officer to reconsider the refusal. *See* State Dep't, Administrative Processing Information, available at: https://usaodc.click/AdminProcessInfo. Notably, there is no statutory command to engage in additional administrative processes that could assist noncitizens to meet their burden to demonstrate an eligibility for a visa. Instead, the statutory scheme dictates that a consular officer must refuse a visa to a noncitizen who fails to demonstrate their eligibility for it. As noted above, that occurred here with respect to the Visa Application.

## LEGAL STANDARDS

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678. However, a court is not required to accept conclusory allegations or unwarranted factual

deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## ARGUMENT

### I.     Plaintiff's Claims Fail Because There is No Discrete Agency Action that a Consular Officer is Required to Take.

Plaintiff cannot identify a clear, non-discretionary duty requiring a consular officer to take any action on her father's Visa Application now that it has been refused under INA Section 221(g), 8 U.S.C. § 1201(g).  This means Plaintiff has failed to state a claim upon which relief can be granted, and the Court should dismiss this suit with prejudice. *See Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) ("dismissal with prejudice is warranted [ ] when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency" (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).

"District courts can compel agency action only in the 'extraordinary' case when they find the official committed a 'transparent violation of a clear duty to act' and has 'unreasonably delayed the contemplated action.'" *Karimova*, 2024 WL 3517852, at *1 (cleaned up; quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).  Plaintiffs in suits of this type typically bring both a claim under the APA and a mandamus claim under 28 U.S.C. § 1361.  On the latter, "[t]o obtain a writ of mandamus, the petitioner must show, among other things, that the agency has violated 'a crystal-clear legal duty.'" *Karimova*, 2024 WL 3517852, at *3 (citing *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022), and *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022)).  "Similarly, to make out a claim of agency inaction under Section 706

of the APA, the plaintiff must 'identify a legally required, discrete act that the agency has failed to perform.'" *Karimova*, 2024 WL 3517852, at *3 (cleaned up; quoting *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009)). "Those two paths to compulsory relief share a common threshold: The court may act 'only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.'" *Karimova*, 2024 WL 3517852, at *2 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted)). Indeed, because the claims are functionally identical in this circumstance, *see Kangarloo v. Pompeo*, Civ. A. No. 20-0354 (CJN), 2020 WL 4569341, at *7 (D.D.C. Aug. 7, 2020), Defendants address them together herein.

In *Karimova*, the Circuit affirmed the dismissal of a post-refusal immigration mandamus suit brought against the State Department. In so doing, the court ruled that the Government has no clear, non-discretionary duty to further process or adjudicate a visa application once it has been refused by a consular officer under INA Section 221(g), 8 U.S.C. § 1201(g). Accordingly, the court held that there was no basis to compel agency action (including pending post-refusal administrative processes) either under the APA or the Mandamus Act. This holding of the D.C. Circuit is dispositive of the claims in this case,[1] where Plaintiffs seek to compel State Department

---

[1] Although *Karimova* is currently an unpublished opinion of the D.C. Circuit, under its rules, it still has binding precedential weight. *Khaksari v. Chairman, Broad. Bd. of Governors*, 451 F. App'x 1, 4 (D.C. Cir. 2011) (noting that unpublished prior panel decision of the court "has the force of precedent[;]" citing D.C. Cir. R. 32.1(b)(1)(B) ("All unpublished orders or judgments of this court, including explanatory memoranda (but not including sealed dispositions), entered on or after January 1, 2002, may be cited as precedent.")). That is, while an unpublished resolution may not bind future D.C. Circuit panels, *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011), such a resolution is binding on this Court because "that decision is precedential[.]" *Davis v. U.S. Sent'g Comm'n*, 716 F.3d 660, 666 n.2 (D.C. Cir. 2013); *Ibrahim v. Spera*, Civ. A. No. 23-3563 (ABJ), 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) ("This Court is bound to follow this precedent. . . . the Court is unaware of any authority it might have to review or disregard a decision issued by an appellate court."); *but see Hajizadeh v. Blinken*, Civ. A. No. 23-1766 (LLA), 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) (finding *Karimova* is not controlling and declining to

officials to act further on visa applications refused under INA Section 221(g) and undergoing post-refusal administrative processing. *Ibrahim*, 2024 WL 4103702, at *3 ("as the Circuit states quite plainly that the consul's refusing to grant an application and placing it in administrative processing is a final refusal"); *Hemmat v. Blinken*, Civ. A. No. 23-2085 (TSC), 2024 WL 4210658, at *4 (D.D.C. Sept. 17, 2024) ("The *Karimova* decision is fatal to Plaintiffs' claim of unreasonable delay. . . .  Because refusal concludes the matter presented by a visa application, Section 555(b) does not establish a duty to take the action that Plaintiffs claim has been unreasonably delayed—further adjudicating the refused visa applications.").

The court examined the statutory and regulatory commands applicable to consular visa processing to assess whether the State Department had a clear duty to act on a visa application after a consular officer had refused it. *Karimova*, 2024 WL 3517852, at *1–2, 4.  It found none.  Specifically, while the court noted that a consular officer had a duty to either "issue" or "refuse" a visa once an application is executed at an in-person interview with a consular officer, *id.* at *1, it noted that once an application is refused, that decision is "final" under the law.  *Id.* at *2 ("There is no such thing as an informal refusal or a pending case once a formal application has been made." (quoting State Dep't Foreign Affairs Manual ("FAM") 504.1-3(i))).  In short, the court held:

> [Plaintiff's] appeal centers on her claim that the consular officer owed her a duty to make a "final decision" on her visa application.  By "final decision," she means that the consular officer was required to either issue her a visa or refuse her application, without then also placing it in administrative processing.  The district court properly dismissed that claim because [plaintiff] has not identified any law plainly prescribing that the consular officer not put an officially refused visa application in administrative processing.

*Karimova*, 2024 WL 3517852, at *3 (cleaned up); *see also Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 101 (D.D.C. 2024) ("In refusing Plaintiffs' applications under § 221(g) after their interviews

---

adhere to its holdings).  Ultimately, controlling or not, the Court should apply *Karimova*'s holdings here as they are correct as a matter of law.

with consular officers, State complied with the regulations governing visa adjudications. It thereby discharged its nondiscretionary duty."); *Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 7 (D.D.C. 2024) ("[T]he only duty that the statute or regulations impose on consular officers is a duty to grant or refuse a visa. And that duty has been performed; [the noncitizen's] application has been refused. The statute does not create an additional duty to engage in post-refusal reconsideration of the visa application." (cleaned up)).

The D.C. Circuit also rejected the noncitizen's attempt to find a clear duty to act in the general provisions of the APA itself, in particular APA Section 555(b). *Karimova*, 2024 WL 3517852, at *3–6. "That Section is an ancillary provision stating that each agency shall proceed to conclude a matter presented to it with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." *Id.* at *3 (cleaned up; quoting 5 U.S.C. § 555(b)). As such, the court concluded that "[i]ts non-specific directive to all agencies to 'proceed to conclude a matter' within a 'reasonable time' and with 'due regard' to the parties leaves officials ample room for judgment based on the circumstances. It does not plainly define and place upon consular officers a crystal-clear legal duty after they have adjudicated a visa application to then forgo any potentially beneficial follow-on administrative processing[.]" *Karimova*, 2024 WL 3517852, at *3 (cleaned up).

Lastly, the D.C. Circuit noted "particular acute problems" in finding a clear duty to act in APA Section 555(b) in the context of the case, which (as with this action) involved the actions of a consular officer abroad. In listing these problems, the court explained, in part, that its "starting point is that consular officers have broad discretion when adjudicating visa applications[,]" that plaintiff's "argument hinges on defining what it means to conclude a visa application in a manner that neither a federal statute nor regulation clearly requires[,]" and that plaintiff's "claim is not

standard administrative fare"—"[i]t arises within a field that is 'vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations and the war power.'" *Karimova*, 2024 WL 3517852, at *5 (cleaned up; quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952)).

Ultimately, the Court concluded that the plaintiff's argument hinged on a demand for action "that neither a federal statute nor regulation clearly requires." *Karimova*, 2024 WL 3517852, at *4 ("Nothing in federal law speaks to the ability of a consul, after making that decision, to hold onto the application in case circumstances later change in the applicant's favor[.]").  In closing, the court explained:

> [Plaintiff] sued in district court to obtain the exceptional and rare relief of an order compelling the consular officer overseeing her visa application to make yet another "final decision" on her already-refused visa application.  Because [plaintiff] has not identified an adequate legal basis for that duty, the district court properly dismissed her claim.

*Id.* at *6.

The D.C. Circuit's holding in *Karimova* is dispositive of the claims presented in this case. Accordingly, the Court should dismiss this suit because Defendants have no duty to act further on the visa application at issue in this action.

## II.    Plaintiff's Claims Fail Under the Consular Non-Reviewability Doctrine.

Because Plaintiff is seeking to compel action after a consular officer has refused her father's visa application, this suit runs headfirst into the consular non-reviewability doctrine, warranting its dismissal under Rule 12(b)(6).  Most recently, the Supreme Court reaffirmed this doctrine, and its scope, in *Muñoz*, 602 U.S. at 899.  There, the Supreme Court recognized "the longstanding principle 'that the United States can, as a matter of public policy . . . forbid [noncitizens] or classes of [noncitizens] from coming within their borders,' and '[n]o limits can be put by the courts upon' that power."  *Id.* at 1824–25 (quoting *Wong Wing v. United States*, 163

U.S. 228, 237 (1896)).  Further, "Congress may delegate to executive officials the discretionary authority to admit noncitizens" which is "immune from judicial inquiry or interference." *Id.* at 1820 (citing *Harisiades*, 342 U.S. at 588–91).  And upon exercising this authority, the consular officer's decision "'to admit or to exclude [a noncitizen]' 'is final and conclusive.'" *Id.* (quoting *United States ex rel. Knauff v. Shaugnessy*, 338 U.S. 537, 543 (1950)).  Rather than explicitly cabin the doctrine of consular nonreviewability, the Supreme Court emphasized that the INA "does not authorize judicial review of a consular officer's denial of a visa" absent express congressional authorization.  *Id.*

The D.C. Circuit has been equally clear:  "[c]onsular nonreviewability shields a consular officer's decision to issue *or withhold* a visa from judicial review, at least unless Congress says otherwise."  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (emphasis added) (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)); *see also Colindres v. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023) ("Reflecting the limited role of the judiciary, the consular-non-reviewability doctrine shields a consular official's decision to issue or withhold a visa from judicial review, with two narrow exceptions." (cleaned up)).  This is because "[d]ecisions regarding the admission and exclusion of noncitizens may implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances and, accordingly, such judgments are frequently of a character more appropriate to either the Legislature or the Executive." *Baan Rao*, 985 F.3d at 1024 (cleaned up); *see Knauff*, 338 U.S. at 543 ("it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given [noncitizen]"); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) (stating it is "settled that the judiciary will not interfere with the visa-issuing process").

Indeed, by confining the exceptions to the doctrine and noting that the doctrine prevents review of decisions to "withhold" visas, the Supreme Court's approach in *Muñoz* and the D.C. Circuit's approach in *Baan Rao* mirrors the widely held view of courts in the Second Circuit that "the doctrine of consular nonreviewability applies not only when 'a plaintiff challenges an official's discretionary decision to approve or deny a visa application,' but also 'where a plaintiff seeks to compel an official to simply adjudicate a visa application.'" *Abdo v. Tillerson*, Civ. A. No. 17-7519, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019) (collecting cases; noting limited exception for "cases brought by U.S. citizens raising constitutional, rather than statutory, claims"). As such, under the Supreme Court and D.C. Circuit's recent guidance, Plaintiff's complaint fails to state a claim for relief. *Baan Rao*, 985 F.3d at 1027-29.

While there was some debate preceding the D.C. Circuit's decision in *Karimova* as to whether the doctrine applied in cases seeking to compel action on visa applications in post-refusal administrative processes, *Karimova* necessitates an end to that debate. The disagreement between judges in this District before *Karimova* hinged on whether a refusal under INA Section 221(g) was final or not. *See, e.g.*, *Janay v. Blinken*, Civ. A. No. 23-3737 (RDM), 2024 WL 3432379, at *8 (D.D.C. July 16, 2024) (reasoning the doctrine is limited only to "final" decisions "to admit or exclude" a noncitizen and does not "extend[ ] beyond that limited universe"). But as noted above, the D.C. Circuit in *Karimova* rejected the notion that an INA Section 221(g) refusal was somehow not "final." *Karimova*, 2024 WL 3517852, at *2–3, 6 ("[Plaintiff] sued in district court to obtain the exceptional and rare relief of an order compelling the consular officer overseeing her visa application to make yet another 'final decision' on her already-refused visa application. Because [Plaintiff] has not identified an adequate legal basis for that duty, the district court properly dismissed her claim."). Indeed, as one judge in this District has observed, "[t]he Circuit's recent,

10

unpublished decision in *Karimova* . . . casts doubt on the accuracy of the reasoning in those decisions. In *Karimova*, the court explained that once a consular official refuses a visa application, the visa has been 'officially refused.'" *Motevali v. Blinken*, Civ. A. No. 23-2133 (RC), 2024 WL 3580937, at *4 (D.D.C. July 30, 2024).

Accordingly, a straightforward application of the consular nonreviewability doctrine to the "official" refusal of the Visa Application in this case precludes Plaintiff's claims here. A consular officer has decided to withhold issuing a visa. That decision is not reviewable and ends this matter. *See Yaghoubnezhad*, 2024 WL 2077551, at *11 ("State has already taken definitive action, and Plaintiffs want the Court to order it to engage in discretionary re-adjudication of that action more quickly. But that is, in effect, no different from ordering the State Department to reopen a dispositive adjudication."); *see also Sedaghatdoust*, 735 F. Supp. 3d at 7 ("[U]nder the consular nonreviewability doctrine, the Court cannot inquire into the basis or validity of that decision. Nor can the Court compel any kind of discretionary post-refusal reconsideration. So under the consular nonreviewability doctrine, Plaintiff is out of luck. The Court can give him nothing that he wants." (citations omitted)). Plaintiff cannot "circumvent the doctrine by claiming that he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision[,]" by seeking, for example, "an order requiring Defendants to 'collect information' and 'exercise actual discretion in processing and adjudicating Plaintiffs' new application for a [ ] visa[.]" *Kolesnikov v. Blinken*, Civ. A. No. No. 23-1675 (TSC), 2024 WL 3638345, at *2 (D.D.C. Aug. 2, 2024). As such, the Court should dismiss this suit with prejudice under the consular nonreviewability doctrine.

In this case, application of the doctrine is particularly appropriate. As in *Muñoz*, Plaintiff here is not an applicant for a requested visa. Instead, Plaintiff is a sponsoring third-party that

wishes to bring an applicant noncitizen to this country. *See* Compl. As the Supreme Court held in *Muñoz*, the Court's precedents do "*not* hold that citizens have procedural due process rights in the visa proceedings of others." *Muñoz*, 144 S. Ct. at 1826 (emphasis in original). In *Muñoz*, this led the Supreme Court to conclude that the sponsoring citizen had no right to receive additional procedures in the visa application of another, finding those procedural claims barred by the consular nonreviewability doctrine. *Id.* at 1826–27. Here, the Court should conclude the same— i.e., that the doctrine forecloses any claim by Plaintiff for additional or further procedures in considering the visa application of the noncitizen applicant in this case.

## III.    On the Merits, Plaintiff's Complaint Fails to State a Plausible Claim of <u>Unreasonable Delay.</u>

Even were the Court to consider Plaintiff's claims further, Plaintiff has still failed to state a claim because any delay here is not unreasonable as a matter of law. "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *Core Commc'ns*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 79). Courts in this Circuit apply a six-factor test to determine whether agency action has been unreasonably delayed:

(1)    the time agencies take to make decisions must be governed by a rule of reason;

(2)    where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3)    delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4)    the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)    the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6)    the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (citations and quotation marks omitted).  Importantly, a plaintiff must allege facts in the complaint making a claim of unreasonable delay plausible under the *TRAC* factors to survive a motion to dismiss.  *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 339 (D.C. Cir. 2023) (affirming dismissal of immigration mandamus suit, holding: "To state a claim for unreasonable delay, Plaintiffs must first allege that the agency failed to take a discrete agency action that it is required to take, and, second, that the delay was unreasonable." (cleaned up)).  Applying the *TRAC* factors here makes clear any delay here is not unreasonable as a matter of law.  *See, e.g.*, *Sivananthan v. Blinken*, Civ. A. No. 23-1181 (CKK), 2023 WL 4885858, at *3 (D.D.C. Aug. 1, 2023) (sua sponte dismissing immigration mandamus suit for failure to state a claim, holding it was "patently obvious" plaintiff could not prevail when the visa application had been pending for just sixteen months and there were no other well-pleaded facts supporting any claim of unlawful delay); *Rezaei v. Garland*, Civ. A. No. 23-1645 (CKK), 2023 WL 5275121, at *5 (D.D.C. Aug. 16, 2023) (same for visa case allegedly delayed by thirteen months).

Indeed, there is a growing unanimous chorus of decisions in this District holding that suits such as this, which seek to compel State Department action on visa requests delayed due to processing limitations, fail under the *TRAC* factors.  *See, e.g.*, *Ari Akrayi v. Dep't of State*, Civ. A. No. 22-1289 (CRC), 2023 WL 2424600, at * 3 (D.D.C. Mar. 9, 2023) (nearly 3-year delay "falls comfortably within the range of reasonableness" under *TRAC*); *Memon v. Blinken*, Civ. A. No. 22-0754 (CKK), 2023 WL 1438396, at *1 (D.D.C. Feb. 1, 2023) (finding a 34-month wait at NVC for visa interview not unreasonable; "no plausible facts warranting such inequitable relief" as to allow plaintiff to "cut the line in front of less fortunate applicants without the means to secure

13

counsel"); *Rahimian v. Blinken*, Civ. A. No. 22-785 (BAH), 2023 WL 143644, at *9 (D.D.C. Jan. 10, 2023) ("Considering all six *TRAC* factors, plaintiff, who alleges a delay of forty-one months] has not stated a claim under the APA or the Mandamus Act for unreasonable delay."); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 169 (D.D.C. 2021) (McFadden, J.) (dismissing immigration mandamus suit under *TRAC*, "[t]he Court does not doubt that the waiting time has impacted [plaintiff] and her family. But 'delays stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities.' And [plaintiff] offers no basis for judicial line-cutting those also waiting their turn") (citation omitted); *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168 (D.D.C. 2021) (McFadden, J.) (same); *Shen v. Pompeo*, Civ. A. No. 20-1263 (ABJ), 2021 WL 1246025, at *7-9 (D.D.C. Mar. 24, 2021) (dismissing immigration mandamus suit under *TRAC*); *Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (Kelly, J.) (denying motion for provisional relief in immigration mandamus suit, "Defendants, not this Court, know best how to allocate their resources and prioritize the processing of visa applications."); *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150-51 (D.D.C. 2021) (Howell, J.) (denying motion for provisional relief in immigration mandamus suit, "defendants face challenges in determining how to best deploy scarce resources"); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 316-20 (D.D.C. 2020) (Boasberg, J.) (same).

### A.    TRAC Factors 1 and 2

The first and second *TRAC* factors weigh in Defendants' favor.  *See Dastagir*, 557 F. Supp. 3d at 165-67; *Mohammad*, 548 F. Supp. 3d at 165–67; *Liu*, 544 F. Supp. 3d at 10-12; *Shen*, 2021 WL 1246025, at *8; *Milligan*, 502 F. Supp. 3d at 318-19.  These factors ask whether the length of time for the agency to act is governed by a "rule of reason" as informed by any specific timetable established by Congress.  *Id.*  There is no statutory or regulatory timeframe within which the State Department or a consular officer must re-adjudicate visa applications.  "To the contrary,

14

Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) (Leon, J.) (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention"). Because Congress has established no firm timetable for a consular official to re-adjudicate the visa application at issue, the Court must determine whether the application has been pending for an unreasonable amount of time as established by case law. *See Sarlak v. Pompeo*, Civ. A. No. 20-0035 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine whether a delay is reasonable).

Here, the case law undercuts Plaintiff's claim of unreasonable delay. The alleged delay here, *see supra*, is shorter than what courts in this District have routinely concluded does not constitute unreasonable delay. *See Da Costa*, 80 F.4th at 339 (rejecting contention that a four-and-a-half year delay in granting immigration benefits is "per se unreasonable"); *Ghadami v. Dep't of Homeland Sec.*, Civ. A. No. 19-0397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law."); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 94 (D.D.C. 2020) (Bates, J.) (finding that "the roughly twenty-five-month delay to this point in adjudicating [plaintiff's] waiver eligibility is not unreasonable"); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (Cooper, J.) (holding that the plaintiffs had "failed to establish that the two-year delay in processing [a] waiver application is unreasonable"); *Skalka*, 246 F. Supp. 3d at 153–54 (citing case law that even a five- to ten-year delay in the immigration context may be reasonable); *Fang Fang Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) (finding a three-year delay in adjudicating an asylum application to not be unreasonable under the APA). Using this "case law

as a guide," these initial *TRAC* factors weigh in Defendants' favor. *See, e.g.*, *Sarlak*, 2020 WL 3082018, at *6; *Sivananthan*, 2023 WL 4885858, at *3 (in sua sponte dismissing immigration mandamus suit, finding that "the first and second *TRAC* factors do not lend credence to Plaintiff's claim" and "courts in this jurisdiction routinely find that delays of numerous *years* are not unreasonable[,]" and collecting authorities (emphasis in original)); *Rahman v. Blinken*, Civ. A. No. 22-2732 (JEB), 2023 WL 196428, at *3 (D.D.C. Jan. 17, 2023) (alleged eleven-month delay in processing nonimmigrant visa application was not unreasonable); *Sawahreh v. Dep't of State*, 630 F. Supp. 3d 155, 160–64 (D.D.C. 2022) (Boasberg, J.) (alleged fifteen-month delay in processing nonimmigrant visa application was not unreasonable); *Shen*, 2021 WL 1246025, at *8 (finding that first two *TRAC* factors favored agency in case involving twenty-one-month delay on nonimmigrant visa).

Moreover, "[a]bsent a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable" "is entitled to considerable deference." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (internal quotations and citations omitted). The State Department's decision-making here—the allocation of consular services— "involve[] a complicated balancing of a number of factors which are peculiarly within [an agency's] expertise." *Lincoln v. Vigil*, 508 U.S. 182, 190–91 (1993); *see Massachusetts v. EPA*, 549 U.S. 497, 527 (2007) ("[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities."). The State Department's allocation of consular services is "entrusted by a broadly worded statute [8 U.S.C. § 1104]," which involves "balancing complex concerns involving security and diplomacy, State Department resources and the relative demand for visa applications." *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997); *see Skalka*,

246 F. Supp. 3d at 153–54 ("To the contrary, Congress has given the agencies wide discretion in the area of immigration processing."). Yet Plaintiff here, through the Complaint, demands the Court interfere with the Department's broad, discretionary authority over the allocation of consular services. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543–44 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties. Indeed, our cases could hardly be more explicit in this regard.") (citations and quotation marks omitted).

### B.    TRAC Factor 4

The fourth *TRAC* factor—the effect of granting relief on the agency's competing priorities—carries significant weight, *see Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003), and weighs heavily in Defendants' favor, as Plaintiff asks this Court to prioritize his father's Visa Application here ahead of others. Indeed, "[r]elief that would simply 'reorder' a queue of applicants seeking adjudication is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved." *Tate*, 513 F. Supp. 3d at 149–50 (quoting *Sarlak*, 2020 WL 3082018, at *6). Under this Circuit's precedent, a court will not compel agency action where the result would be merely to expedite the consideration of a plaintiff's application ahead of others. *See Da Costa*, 80 F.4th at 344 ("While judicial intervention could assist the Plaintiffs, it would likely impose offsetting burdens on equally worthy [ ] visa petitioners who are equally wronged by the agency's delay." (cleaned up)); *Liberty Fund v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (Bates, J.) (courts will not compel agency action where result "would mean putting [plaintiff] at the head of the queue at the expense of others"); *In re Barr Lab'ys*, 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a unique—and authoritative— position to view its projects as a whole, estimate the prospects for each, and allocate its resources

in the optimal way."); *Sarlak*, 2020 WL 3082018, at *6 (finding that the fourth factor weighed in the government's favor because expediting the plaintiff's waiver would harm other agency activities of equal or greater priority); *Ghadami*, 2020 WL 1308376, at *9 (finding that "expediting review in [plaintiff's] case would merely direct government resources from the adjudication of other waiver applications"); *Fang Fang*, 434 F. Supp. 3d at 55 ("The effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication."); *see also Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017) ("There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit. That factor should not give him any advantage."); *Varol v. Radel*, 420 F. Supp. 3d 1089, 1098 (S.D. Cal. 2019) ("[G]ranting relief to the Plaintiff simply moves her to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief.").

To be sure, Plaintiff may argue that she asks to re-adjudicate only a single application, which would not fundamentally augment the pace of considering other applications were the Court to grant Plaintiff's requested relief. But the Court should not struggle to cast this argument aside. This *TRAC* factor nonetheless favors the Government because "[w]hile the effect of an individual case would be minimal, the accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate*, 513 F. Supp. 3d at 150; *see also Da Costa*, 80 F.4th at 343 ("moving Plaintiffs' [immigration] petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the USCIS backlog"). Thus, "[t]his factor heavily favors defendants' position." *Id.*; *see also*

18

*Dastagir*, 557 F. Supp. 3d at 167-68; *Mohammad*, 548 F. Supp. 3d at 167–68; *Liu*, 544 F. Supp.

3d at 13-14; *Shen*, 2021 WL 1246025, at *9; *Milligan*, 502 F. Supp. 3d at 319.

### C.    TRAC Factors 3 and 5

"The third and fifth [*TRAC*] factors overlap—the impact on human health and welfare and

economic harm, and the nature and extent of the interests prejudiced by the delay." *Liberty Fund*,

394 F. Supp. 2d at 118.  These factors also weigh in Defendants' favor.  Plaintiff's position is not

unique.  Prioritizing her father's Visa Application here will simply benefit a certain noncitizen to

the detriment of others who may have experienced the same or worse impacts from a delay.  *See*,

*e.g.*, *Pushkar v. Blinken*, Civ. A. No. 21-2297 (CKK), 2021 WL 4318116, at *9 (D.D.C. Sept. 23,

2021) ("[I]t is not just [plaintiff's] 'health and welfare' that the Court must consider, but also that

of others similarly-situated."); *Mohammad*, 548 F. Supp. 3d at 168–69 ("But the Court is also

mindful that many others face similarly difficult circumstances as they await adjudication of their

visa applications.") (citation and internal quotations omitted).  Indeed, expediting review in this

case over the applications of other noncitizens would direct resources away from the adjudications

that the State Department has identified as more urgent, requiring this Court to overrule the

Department's prioritization decisions and place Plaintiff at the front of the line.  *See Barr Lab'ys*,

930 F.2d at 75-76 (observing that "a judicial order putting [the petitioner] at the head of the queue

[would] simply move[ ] all others back one space and produce[ ] no net gain[,]" and that agencies

are in the best position to allocate their own resources); *Skalka*, 246 F. Supp. 3d at 154 (noting that

courts step outside their "limited role" where they require "agencies to invest the high degree of

resources that would be necessary to accurately investigate plaintiffs' visa petitions," for such a

requirement "would presumably delay other adjudications" and make others "suffer in response").

Moreover, Plaintiff fails to plead the type of harms that could make the third and fifth

*TRAC* factors plausibly tilt in Plaintiff's favor.  *See Da Costa*, 80 F.4th at 345 (finding third and

fifth factors did not favor noncitizens when they failed "for example, [to] allege that they are unable to access electricity, water, food, or shelter").

### D.    TRAC Factor 6

The sixth and final *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80.  In the Complaint, Plaintiff does not allege bad faith on the part of the State Department, alleging at most that the Department and the U.S. Consulate could be more forthcoming with information regarding the refused application and its status.  *See generally* Compl.  While a lack of information may be frustrating, it is not proof of impropriety or bad faith. Reviewing similar facts, courts have concluded that this factor also weighs in Defendants' favor. *See Tate*, 513 F. Supp. 3d at 150–51 ("the good faith of the agency in addressing the delay weighs against relief") (quotation marks omitted); *see also Dastagir*, 557 F. Supp. 3d at 168; *Mohammad*, 548 F. Supp. 3d at 169; *Liu*, 544 F. Supp. 3d at 14; *Shen*, 2021 WL 1246025, at *9; *Milligan*, 502 F. Supp. 3d at 319–20.  This Court here should similarly conclude that this factor weighs in Defendants' favor.[2]

---

[2]    Lastly, although Plaintiff brings APA claims, the basis for Plaintiff's challenge is not of final agency action, but rather agency inaction. Accordingly, the requirement of the local rules to produce an administrative record with the filing of this dispositive motion does not apply. *See* LCvR 7(n) (requirement applies "[i]n cases involving the judicial review of administrative agency *actions*") (emphasis added); *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 539–40 (D.D.C. 2021) (Mehta, J.) (noting the two flavors of APA review—review of agency action and agency inaction—concluding both are considered on an administrative, not discovery record, on summary judgment). Moreover, the production of an administrative record at this stage is unnecessary—the United States seeks to dismiss this case not based on an administrative record, but instead based on the facts alleged in the complaint and the present status of the visa application. *See generally Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (Lamberth, J.) (noting that often "if an agency fails to act, there is no 'administrative record' for a federal court to review.") (citing *TRAC,* 750 F.2d at 79).

**CONCLUSION**

For the foregoing reasons, the Court should dismiss this action with prejudice.  A proposed order is enclosed herewith.

Dated: August 10, 2025
           Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____ */s/ Kaitlin K. Eckrote* _____
       KAITLIN K. ECKROTE
       D.C. Bar #16708999
       Assistant United States Attorney
       601 D Street, NW
       Washington, DC 20530
       (202) 252-2485

*Attorneys for the United States of America*