**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FARNAZ NOJAVAN ASGHARI,<br><br>          Plaintiff,<br><br>     v.<br><br>MARCO A. RUBIO, in his official capacity as Secretary of State, *et al.*,<br><br>          Defendants. | Case No. 25-cv-1666 (JMC) |

## MEMORANDUM OPINION

Plaintiff Farnaz Nojavan Asghari files this suit seeking to compel the adjudication of her father Yadollah Nojavan Asghari's immigration visa application. ECF 1. Plaintiff names as Defendants Secretary of State Marco Rubio, the U.S. Department of State, a senior State Department official, and the consul general for the United States in Turkey. Plaintiff contends that the application at issue has been stuck in administrative processing and thus is unreasonably delayed in violation of the Administrative Procedure Act (APA) and the Mandamus Act. Defendants have moved to dismiss Plaintiff's claims on various grounds. While the Court does not find all of Defendants' arguments for dismissal persuasive, it does agree that Plaintiff has failed to state a plausible claim for unreasonable delay. Accordingly, the Court will **GRANT** Defendants' motion to dismiss.[1]

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

## I.    BACKGROUND

The Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1101 *et seq.*, governs the issuance of visas to immigrants pursuing admittance into the United States. A U.S. citizen or lawful permanent resident seeking to help a relative immigrate to the United States must first file with the U.S. Citizenship and Immigration Services (USCIS) a Form I-130. *See I-130, Petition for Alien Relative*, USCIS, https://perma.cc/B2AN-XXH8; 8 C.F.R. §§ 204.1(a)(1), 204.2(f)(3). If USCIS approves the petition, it is then sent to the State Department's National Visa Center (NVC). 8 C.F.R. § 204.2(f)(3). At that point, applicants must submit another application to the NVC and await an interview with a consular officer. 22 C.F.R. §§ 42.61–.62. At the conclusion of the interview, "the consular officer must [either] issue . . . [or] refuse the visa." *Id.* § 42.81(a). If a consular officer determines that there is not sufficient information to establish visa eligibility, the officer may provisionally "refuse" the visa pending further administrative processing under Section 221(g) of the INA, which typically consists of additional information-gathering. *Administrative Processing Information*, U.S. Dep't of State, https://perma.cc/R88M-J2XC; *see* 8 U.S.C. § 1201(g).

Plaintiff filed a Form I-130 Petition with USCIS on behalf of her father, Yadollah Nojavan Asghari, in October 2021.[2] ECF 1 ¶ 9; *id.* at 7. His application was approved for processing and transferred to the NVC in March 2022. *Id.* ¶ 10. On October 27, 2023, the U.S. Embassy and Consulate in Ankara, Turkey interviewed him. *Id.* ¶ 13. After the interview, Plaintiff received an email from the Embassy to complete a Form DS-5535, Supplemental Questions for Visa Applicants; Plaintiff's father "promptly submitted" the form on the same day. *Id.* ¶ 14. Plaintiff

---

[2] Defendants have not disputed that Plaintiff has standing. Other courts in this district have found that a visa applicant's family members have third-party standing to bring a suit. *See, e.g.*, *Zoroofchi v. Rubio*, No. 24-cv-1556, 2025 WL 928607, at *3 (D.D.C. Mar. 27, 2025).

alleges that, despite multiple attempts to inquire regarding the status of her father's application, "no substantive resolution or explanation" has been provided and, "[d]espite the interview being completed, no decision has been issued on [her] father's visa application." *Id.* ¶ 15–17. Plaintiff concurrently filed an immigrant visa petition for her mother, who received the visa shortly after her interview and entered the United States on March 8, 2024. *Id.* ¶ 19. The delay of her father's visa has "caused significant emotional and logistical hardship to Plaintiff and her family." *Id.* ¶ 18. On May 23, 2025, still having heard nothing from Defendants, Plaintiff filed this suit for a writ of mandamus compelling Defendants to act on her father's visa application. *Id.* at 3. Defendants then moved to dismiss. ECF 4.

## II.    LEGAL STANDARD

The Court resolves the pending motion under Rule 12(b)(6). Under that rule, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making that determination, the Court relies on the complaint itself, which may include "documents attached as exhibits or incorporated by reference in the complaint." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011). The Court must "treat the complaint's factual allegations as true" and afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

## III.    ANALYSIS

In their Rule 12(b)(6) motion, Defendants move to dismiss this case on several grounds. To start, Defendants assert that two threshold issues bar review of Plaintiff's claims. First, they argue that the doctrine of consular nonreviewability applies. ECF 4 at 15–19. Second, they contend that there is no action the Court could compel Defendants to perform under the APA because

Plaintiff's father's visa application has already been refused and thus there is no remaining non-discretionary agency action pending. ECF 4 at 11–15; *see* 5 U.S.C. §§ 555(b), 706(1). The Court finds that neither of these threshold issues warrant dismissal. The consular nonreviewability doctrine does not apply here because Plaintiff's claims are based on Defendants' failure to render a decision on the application; Plaintiff does not seek judicial review of any consular officer's final determination. Additionally, the Court concludes that Plaintiff can bring this suit to compel a final decision on her father's application that remains in administrative processing because issuing a decision on the pending visa application is a discrete agency action required by law.

Having resolved those issues in Plaintiff's favor, the Court turns to Defendants' third basis for dismissal—that Plaintiff has failed to state a claim for unreasonable delay. A delay of about 18 months—from the date when her father interviewed to the filing of her complaint—is not unreasonable. Even a delay of 29 months—measuring from the interview to the present day—is within the range of what courts in this district have routinely found to be reasonable. Further, the Court cannot practically grant Plaintiff's request for relief without reordering the queue for immigration adjudications and placing her father's application ahead of others who are also awaiting action on their visa applications. That type of reshuffling of agency priorities is not the proper role of the Court. Accordingly, the Court finds that Plaintiff has failed to state a claim for unreasonable delay and grants Defendants' motion to dismiss under Rule 12(b)(6).

### A. Consular Nonreviewability

The Court begins with Defendants' argument for dismissal based on the doctrine of consular nonreviewability. ECF 4 at 15. The doctrine of consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). Because decisions regarding the admission and

exclusion of noncitizens "may implicate relations with foreign powers [and] involve classifications defined in the light of changing political and economic circumstances," such assessments "are frequently of a character more appropriate to either the Legislature or the Executive." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Mathews v. Diaz*, 426 U.S. 67, 81 (1976)).

That doctrine, however, does not apply where plaintiffs "do not seek judicial review of a consular decision, but instead seek a final decision on their applications." *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-cv-01388, 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019). And that is what Plaintiff seeks here. Plaintiff is not asking the Court to pass judgment on any reason a consular officer may have for refusing her father's application—she just wants the Court to order Defendants to make a decision. That logic applies despite the nominal "refusal" that Plaintiff alleges happened before the current administrative processing stage began. *See* ECF 1 ¶ 14 (noting that following the visa interview, Plaintiff's father was asked to submit additional information via Form DS-5535); *id.* at 14 (noting that "processing" of the application was continuing). Indeed, "a long line of decisions" from courts in this district have concluded that the doctrine does *not* prohibit judicial review in cases analogous to this one because consular nonreviewability "applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (collecting cases).

Pointing to an unpublished D.C. Circuit opinion in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), Defendants argue that a consular officer's initial refusal of a visa application is a final decision that this Court cannot review, even if Plaintiff alleges that her father's application remains under consideration in subsequent administrative processing.

ECF 4 at 17. In *Karimova*, the D.C. Circuit determined that the visa applicant before it could not compel a consular officer to take further action on her application, which had been refused, because her matter had "already . . . concluded." *Karimova*, 2024 WL 3517852, at \*4. The Court disagrees with Defendants' position. First, the Court observes that *Karimova* is not binding on it. *See id.* at \*6 (noting that "this disposition will not be published"); Order, *Karimova v. Abate*, No. 23-5178 (D.C. Cir. Sep. 10, 2024), Doc. No. 2074062, at 1 (denying the government's motion to publish). Under the D.C. Circuit's rules, the panel's decision not to publish its opinion means "that the panel sees no precedential value in that disposition." D.C. Cir. R. 36(e)(2); *see also Aramnahad v. Rubio*, No. 24-cv-1817, 2025 WL 973483, \*7 (Mar. 31, 2025) ("This Court agrees . . . that *Karimova*, as an unpublished opinion, is not binding.") (collecting cases). So *Karimova* does not compel the Court to find that the doctrine of consular nonreviewability applies here.

Second, the Court has already been persuaded by the reasoning of other courts in this district—even after *Karimova*—holding that the doctrine of consular nonreviewability does not bar review where plaintiffs sufficiently allege that their applications have not reached final adjudication, such as when they have been placed in administrative processing after a consular interview. *Tehran v. Rubio*, No. 25-cv-1584, 2025 WL 3551629, at \*3 (D.D.C. Dec. 11, 2025); *see also Shushkov v. Rubio*, No. 24-cv-2265, 2025 WL 2389939, at \*4 (D.D.C. Aug. 18, 2025); *Alsaraj v. U.S. Dep't of State*, No. 24-cv-3399, 2025 WL 2732704, at \*5 (D.D.C. Sep. 25, 2025); *Tolymbekova v. Rubio*, No. 25-cv-295, 2025 WL 2576312, at \*4–5 (D.D.C. Sep. 5, 2025); *Mehrpooya v. Allen*, No. 24-cv-2340, 2025 WL 2549279, at \*5 (D.D.C. Sep. 4, 2025); *Aramnahad*, 2025 WL 973483, at \*8 ("[T]he court's conclusion in *Karimova* that refusing an application and placing it in administrative processing is a 'final' decision does not square with the facts Plaintiffs

6

have alleged. . . . [T]he officer's decision to place Plaintiffs' application in administrative processing is not equivalent to rendering a final decision.").

Because the Court "must focus on what is actually happening," and not allow the Government to "elevate form over substance to avoid review," the Court considers the facts Plaintiff has alleged to determine whether a final decision has been made on her father's application. *Aramnahad*, 2025 WL 973483, at \*8 (quoting *Al-Gharawy*, 617 F. Supp. 3d at 16). After all, at the motion to dismiss stage, the Court is bound to assume the truth of Plaintiff's material factual allegations and accept as true all well-pleaded facts and inferences. *See, e.g.*, *Sparrow*, 216 F.3d at 1113. Plaintiff's complaint alleges that she has not received any "substantive response" or "resolution" as to her father's visa application, and that "[d]espite the interview being completed, no decision has been issued." ECF 1 ¶¶ 15–17. Additionally, the U.S. Embassy in Ankara sent Plaintiff an email confirming receipt of her father's post-interview supplemental Form DS-5535. The email stated that the office did not know "how long [the administrative] processing will take," but that it would notify Plaintiff "as soon as it is completed" and provide an explanation of "next steps required to proceed with your application." *Id.* at 14. Taken together, these facts support the plausibility of Plaintiff's allegations that the application remains under consideration and her family is still awaiting a final decision. *See Janay v. Blinken*, 743 F. Supp. 3d 96, 112 (D.D.C. 2024) ("In other words, the application is still being processed and a decision is still forthcoming. It has only been 'refused' in the far-from-literal sense that it has not yet been 'granted' or 'denied.'").

Because Plaintiff does not ask the Court to review any consular officer's decision, but instead seeks a final decision or determination that adjudication has been unreasonably delayed, the doctrine of consular nonreviewability does not apply to bar judicial review of Plaintiff's claims.

7

### B.  Non-Discretionary Duty to Take Agency Action

Next, Defendants contend that Plaintiff has failed to identify "a clear, non-discretionary duty requiring a consular officer to take any action" necessary to establish a mandamus claim or a claim of agency inaction under APA Section 706. ECF 4 at 11. Under the APA, to assert a claim of unreasonable delay, a plaintiff "must first allege that the agency 'failed to take a discrete agency action that it is required to take.'" *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)); *see also* 5 U.S.C. § 555(b) (requiring agencies to take non-discretionary actions within a "reasonable time"); 5 U.S.C. § 706(1) (granting courts the authority to "compel agency action unlawfully withheld or unreasonably delayed"). To obtain a writ of mandamus, a plaintiff must show that Defendants possess "'a clear duty to act' under the circumstances." *Aramnahad*, 2025 WL 973483, at *5 (quoting *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005)); *see also* 28 U.S.C. § 1361 (providing district courts with jurisdiction over mandamus suits to compel action by an officer of the United States). Because "the standards for obtaining relief" under the Mandamus Act and the APA are "essentially the same," the claims are evaluated jointly. *Al-Gharawy*, 617 F. Supp. 3d at 17 (quoting *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010)).

Plaintiff argues that Defendants are required to complete the processing of her father's visa application. ECF 1 at 3 (seeking "timely adjudicatory action" on the application). Plaintiff contends that this "duty" comes from sections 555(b) and 706(1) of the APA. *Id.* But because Defendants take the view that a final adjudication already occurred when her father's application was provisionally refused after his October 2023 interview, they maintain that there is no remaining agency action they are required to take by law. ECF 4 at 15 (arguing that Plaintiff demands action that is required by neither "federal statute nor regulation").

8

Defendants again point to *Karimova*, which they argue is "dispositive" in cases like this where "[p]laintiffs seek to compel State Department officials to act further on visa applications refused under INA Section 221(g) and undergoing post-refusal administrative processing." *Id.* at 12–13. As discussed above, *Karimova* is not binding authority, so the decision would at best be persuasive, not dispositive. *See supra* Section III.A. The Court has already concluded that Plaintiff's complaint sufficiently alleges that her and her family are still awaiting a final decision on her father's visa application, *id.*, and thereby rejects Defendants' argument that they have complied with their non-discretionary duty to provide a final adjudication. *See Hajizadeh v. Blinken*, No. 23-cv-1766, 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024) (citing *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sep. 18, 2023)) (issuing a final decision on a visa application is "plainly a discrete agency action" required by law); *Shushkov*, 2025 WL 2389939, at *6 (collecting cases).

Additionally, in *Karimova*, the plaintiff "rooted the asserted duty to act" in section 555 of the APA, an "ancillary provision stating that 'each agency shall proceed to conclude a matter presented to it' 'with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time.'" *Karimova*, 2024 WL 3517852, at *2–4 (citing 5 U.S.C. § 555(b)). The court in *Karimova* considered whether 5 U.S.C. § 555(b) "and *only* [s]ection 555(b)—places a clear, non-discretionary duty on [a] consular officer" and found that such an ancillary, "non-specific directive" did not. *Id.* at *3. Since *Karimova*, some courts in this district confronting this question have held that a provision of the INA, 8 U.S.C. § 1202(b), "confers on consular officers a non[-]discretionary duty to review and adjudicate immigrant visa applications" placed in post-interview administrative processing. *See, e.g.*, *Thein v. Trump*, No. 25-cv-2369, 2025 WL 2418402, at *11 (D.D.C. Aug. 21, 2025). Because section 1202(b) requires

9

that "[*a*]*ll* immigrant visa applications *shall* be reviewed," that section of the INA "establishes a specific principle of comprehensive review and adjudication by consular officers." *Id*. Defendants' failure to move *all* visa applications towards a final decision—including Plaintiff's father's—violates a non-discretionary duty imposed by section 1202(b). *See id*. And even "[a]bsent binding precedent supporting" the argument "that the INA imposes a non-discretionary duty on the government to adjudicate the visas, the assumption of reviewability [would] permit[] consideration of the merits of [Plaintiff's] visa mandamus claim." *Hamdan v. Oudkirk*, No. 24-cv-1001, 2024 WL 4553983, at \*7 (D.D.C. Oct. 23, 2024); *Sereshti v. Gaudiosi*, No. 24-cv-1288, 2024 WL 4625802, at \*6 (D.D.C. Oct. 30, 2024) (collecting cases on the permissibility of "assuming reviewability" and considering the merits of plaintiffs' visa mandamus claims).

While Plaintiff cites only to the APA in her complaint, the Court finds that it can also consider whether 8 U.S.C. § 1202(b) supplies Defendants' duty to act. *See Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024) ("[W]hen weighing whether a pro se plaintiff has stated a claim, courts must treat technical deficiencies in the complaint leniently and scrutinize the entire pleading to determine if any legally cognizable claim can be found."). The thrust of Plaintiff's claim is clear: She argues that there is a non-discretionary duty to adjudicate her father's immigrant visa application. ECF 1 ¶ 20 (arguing that Defendants have a duty to "adjudicate immigration visa applications within a reasonable time"). Because Plaintiff has made this argument about the existence of a non-discretionary duty, the Court will consider, rather than ignore, recent case law in this district that supports the thrust of her legal claim, even absent her explicit citation to the INA.[3] *See Hoai v. Super. Ct. of D.C.*, 539 F. Supp. 2d 432, 434 (D.D.C.

---

[3] Defendants are also not prejudiced by the Court's lenient construction of Plaintiff's argument. First, as explained above, Plaintiff's core argument is clear. Second, courts in this district analyzed whether section 1202(b) provided a basis for finding this duty prior to briefing being completed in this case, and Defendants were likely on notice of the

2008) (noting that "pro se plaintiffs are not required to use specific legal terms or phrases"); *Brown v. FERC*, No. 24-cv-2538, 2025 WL 894226, at \*4 (D.D.C. Mar. 24, 2025) (construing pro se plaintiff's claim as brought under the Federal Tort Claims Act even though he "does not explicitly mention" the Act). The Court will thus join other courts in this district in finding that 8 U.S.C. § 1202(b) imposes a non-discretionary duty to render a final decision on a visa application placed in administrative processing. Accordingly, because Plaintiff has alleged that her family has not received a final determination on her father's application, there remains a discrete action Defendants are required to take.

## C. Unreasonable Delay

Finally, Defendants argue that Plaintiff has failed to state a plausible claim of unreasonable delay. ECF 4 at 19. Plaintiff argues that an 18-month delay—from the time of the consular interview to the date of her complaint—is unwarranted, especially in light of her father's "advanced age" and "serious medical condition." ECF 1 ¶ 21; ECF 7 at 3. But courts have routinely found similar—and even lengthier delays—to be within the range of reasonableness. Ultimately, the Court agrees with Defendants that Plaintiff has not sufficiently alleged that Defendants' delay warrants judicial intervention and will grant Defendants' motion to dismiss on that basis. The Court dismisses the case without prejudice, permitting Plaintiff to re-file the case if future circumstances warrant judicial resolution. ECF 7 at 3 (requesting a dismissal without prejudice so Plaintiff can seek relief if "unreasonable delay persist[s]").

---

percolation of this argument. *See, e.g.*, *Thein*, 2025 WL 2418402, at \*11 (explaining how section 1202(b) confers a non-discretionary duty). Finally, the Court would be permitted to assume without deciding that Plaintiff has identified a clear non-discretionary duty and jump to assessing how Plaintiff's claims fail on the merits. *Giza v. Blinken*, No. 23-cv-1641, 2024 WL 3967284, at \*4 (D.D.C. Aug. 27, 2024) ("The Court need not decide whether the INA or its regulations impose this duty because, either way, [Plaintiff has] not plausibly alleged that the delay in adjudicating the[] visa application[] is unreasonable."); *Sereshti*, 2024 WL 4625802, at \*6 (noting that the court was "assuming without deciding[] that a mandatory non-discretionary agency action applies in the form of the statutory requirement" of section 1202(b)). Accordingly, generously construing Plaintiff's complaint and addressing the section 1202(b) argument does not alter the outcome of this case.

The central question in evaluating a claim of unreasonable delay is "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 79 (D.C. Cir. 1984)). To assess unreasonable delay, courts assess six "*TRAC*" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (quoting *TRAC*, 750 F.2d at 80).

The *TRAC* factors are not "ironclad" and each case "must be analyzed according to its own unique circumstances" because each "will present its own slightly different set of factors to consider." *Hajizadeh*, 2024 WL 3638336, at *4 (citing *Air Line Pilots Ass'n v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984)). The first and fourth factors are "most important" in the visa application context. *Da Costa,* 80 F.4th at 340. The Court considers the factors below.

### 1. Factors 1 & 2

The first two factors are typically analyzed together and assess "whether there is any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay." *Hajizadeh*, 2024 WL 3638336, at *4. Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Nevertheless, in the visa

application context, courts "often look to the length of delay as a rough yardstick to determine whether th[e] 'first-in, first-out' rule is, in fact, being applied." *Sivananthan v. Blinken*, No. 23-cv-1181, 2023 WL 4885858, at \*3 (D.D.C. Aug. 1, 2023). In this district, the length of delay is usually evaluated from the most recent government action to the date upon which a plaintiff seeks relief in court. *See, e.g.*, *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, \*7 n.7 (D.D.C. Jan. 30, 2024) ("The proper method for calculating delay, however, is the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint. . . . The last action taken on plaintiff's visa application was his consular interview.").

In this case, there was about an 18-month delay from the date of Plaintiff's father's interview to when she filed the complaint. ECF 1 ¶ 21. On its face, that timeline tilts in favor of Defendants. Courts in this jurisdiction have routinely found that similar delays are not unreasonable. *See, e.g.*, *Shabestary v. Sanders*, No. 24-cv-362, 2024 WL 5118229, at \*6 (D.D.C. Dec. 16, 2024) (finding a 22-month "delay in processing" was not unreasonable); *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at \*7 (D.D.C. Feb. 7, 2024) (20 months). Even if the Court measured from the interview to the present day, a delay of 29 months is within the range of what courts in this district have routinely found to be reasonable. While the Court acknowledges that there are "[n]o bright lines . . . district courts have generally found that immigration delays . . . between three to five years are often not unreasonable." *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at \*6 (D.D.C. June 10, 2020). The delay here falls well within the realm of general reasonableness. *See, e.g.*, *Da Costa*, 80 F.4th at 342 (concluding that a 4 year delay is not unreasonable); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592, 2021 WL 5356284, at \*6 (D.D.C. Nov. 16, 2021) (finding that a delay of 42 months was "insufficient to warrant emergency relief in this district"); *Pourshakouri v. Pompeo*, No. 20-cv-402, 2021 WL 3552199, at \*8–9

(D.D.C. Aug. 11, 2021) (finding delay of 44 months not unreasonable); *Varghese v. Blinken*, No. 21-cv-2597, 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (finding delay of "around four years" does "not warrant judicial intervention, standing alone"). As such, these factors weigh in favor of Defendants.

### 2. *Factor 4*

*TRAC* factor four requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Because granting relief in the context of visa applications would necessarily require "reorder[ing] a queue of applicants seeking adjudication," this factor often weighs strongly in favor of Defendants. *Tate v. Pompeo,* 513 F. Supp. 3d 132, 149–50 (D.D.C. 2017); *Akrayi v. U.S. Dep't of State*, No. 22-cv-1289, 2023 WL 2424600, at *4 (D.D.C. Mar. 9, 2023) ("[P]recedent in this circuit recognizes that expediting review here would merely redirect resources from other cases."); *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (finding that "[t]his factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay" where "a judicial order putting the petitioner at the head of the queue would simply move all others back"); *Sivananthan*, 2023 WL 4885858, at *4 (collecting cases).

Plaintiff argues that "[o]rdering adjudication of a single case will not disrupt" Defendants' priorities. ECF 7 at 2 (citing *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020)). But applying this logic, "any individual plaintiff or small group of plaintiffs could prevail on this factor by pointing to their small number." *Tate*, 513 F. Supp. 3d at 150. "While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Id.* Granting the requested relief would, in fact, require the Court to order Defendants to act on Plaintiff's

14

father's application. This would necessarily compel the agency to prioritize resolution of his application ahead of others. ECF 4 at 24–26. The Court must refrain from ordering such relief because deference must be given to the "State Department's priority-setting and resource-allocation decisions" in the visa adjudication context. *Hajizadeh*, 2024 WL 3638336, at \*5; *see also Manzoor v. U.S. Citizenship & Immigr. Servs.*, No. 21-cv-2126, 2022 WL 1316427, at \*6 (D.D.C. May 3, 2022) ("It makes little sense to incentivize the creation of a queue of visa applicants within the docket of the federal judiciary to determine the order of the queue for visa applications."). Because Plaintiff's request for relief would require the Court to take charge of the consulate's priority-setting, ordering the agency to redistribute its resources and prioritize her father's application, the fourth *TRAC* factor weighs in favor of Defendants.

Plaintiff points to her mother's application, which was "filed concurrently and approved without issue," as demonstrating the "arbitrary prejudice" of leaving her father's case "unresolved." ECF 7 at 3. But the fact that applications filed around the same time are processed differently "does not necessarily lead to" that conclusion, as "different visa applications vary in complexity." *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at \*10 (D.D.C. Oct. 23, 2023); *id.* at \*9 (noting that "the fact that others were interviewed after but adjudicated before [an applicant] does not, without other information, mean that Defendants are not adhering to the first-in, first-out rule, as different applications may require different time and attention").

### 3. Factors 3 & 5

The third and fifth factors concern the impacts of the delay on Plaintiff and her family. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests

15

prejudiced by delay.'" *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020) (quoting *TRAC*, 750 F.2d at 80).

Here, Plaintiff alleges that the delays in processing her father's application have "exacerbated" hardship on her family, as her and her mother have remained separated from her father. ECF 1 ¶ 19. Her father is elderly and suffers from a lack of physical and emotional support. ECF 7 at 2. Given her father's age, health conditions, and distance from family, the Court finds that these two factors tend to weigh in Plaintiff's favor. The Court finds, however, that these factors cannot overcome the weight of the other *TRAC* factors favoring Defendants, which the Court analyzed above. *See Pourshakouri*, 2021 WL 3552199, at *10–11 (finding the third and fifth factors favored plaintiffs where visa applicant lived alone at the age of 83 but concluding that other *TRAC* factors weighed against relief); *see Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020) (noting that it was "plainly difficult" for plaintiff to be "separated from his children and his wife" but that a two-year delay was not unreasonable). Accordingly, while these factors tilt in favor of Plaintiff, they do not outweigh the other *TRAC* factors in Defendants' favor.

### 4. *Factor 6*

Finally, the sixth factor addresses "whether the agency's bad faith caused the delay." *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Plaintiff notes that impropriety is not required, ECF 7 at 3, and the Court agrees. The lack of plausible allegations of impropriety does not weigh against Plaintiff and therefore does not alter the Court's analysis. *See Sivananthan*, 2023 WL 4885858, at *5. This factor is thus neutral.

After weighing the *TRAC* factors, the first and fourth being the strongest in the visa application context, the Court concludes that Plaintiff has not plausibly alleged that the delay in

the administrative processing of her father's visa is unreasonable. The delays in visa adjudications are undoubtedly frustrating, but the *TRAC* factors do not warrant judicial intervention.

*   *   *

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim, ECF 4, is **GRANTED**, and Plaintiff's complaint is **DISMISSED** without prejudice.

    **SO ORDERED**.

_____

JIA M. COBB
United States District Judge

Date: March 31, 2026